IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LENN D. REED, SR.,

        Petitioner,

vs.

        Case No. 15-cv-835-DRH-CJP

STEVE DUNCAN,

        Respondent.

---

GLENN W. REED, JR.,

        Petitioner,

vs.

        Case No. 15-cv-872-DRH-CJP

STEVE DUNCAN,

        Respondent.

## MEMORANDUM and ORDER

Lenn Reed and Glenn Reed (hereinafter Petitioners) are twin brothers who were tried and convicted together in 1998 for first-degree murder and aggravated vehicular hijacking in Madison County, Illinois. (Doc. 1). They filed virtually identical petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2254 and the Court consolidated the brothers' petitions for briefing and decision. (Doc. 9). For the following reasons, Petitioners' petitions for habeas relief are dismissed as untimely.

## Relevant Facts and Procedural History

In September 1994, Michael Ufert's body was found in a remote area in Madison County, Illinois, along with his wrecked 1993 Ford Mustang. *People v.*

*Reed*, 324 Ill. App. 3d 671, 673-74 (2001). Petitioners were initially suspects, but no evidence linked them to the crime. *Id.* at 674. In 1996, an anonymous tip prompted the police to investigate Petitioners' cousin, Heather Weeden. *Id.* Weeden confessed and implicated Petitioners, along with their friend Andre Cunningham. *Id.*

The State of Illinois (the State) charged Petitioners and tried them together. *Id.* Cunningham agreed to cooperate with the State and his testimony served as "the centerpiece of the State's case." *Id.* According to Cunningham, Petitioners, Weeden, and Cunningham carried out a plot to hijack Ufert's Ford Mustang. *Id.* Weeden acted as bait and solicited Ufert with "romantic promise." *Id.* at 673. Petitioners and Cunningham watched from afar as Weeden entered Ufert's vehicle. *Id.* at 674. The men followed Ufert and Weeden to an isolated country road next to a field, where the car came to a stop. *Id.* at 675. Ufert, finally cognizant of the scheme, exited the car. *Id.* Lenn struck him in the face with a pistol and Ufert ran into the nearby field. *Id.* Cuningham and Glenn chased Ufert and held him captive. *Id.* Lenn, armed, approached Ufert, who was on his knees pleading for his life. *Id.* Lenn shot Ufert in the face and gave the gun to Glenn with instructions to shoot Ufert again. *Id.* Glenn fired a second shot in Ufert's chest. *Id.* Glenn gave the gun to Cunningham, telling him to shoot Ufert or share a similar fate. *Id.* Cunningham complied. *Id.*

The jury convicted Petitioners; Lenn was sentenced to seventy-five years imprisonment and Glenn was sentenced to seventy-years imprisonment. *Id.* at

On direct appeal, the Appellate Court of Illinois affirmed Petitioners' convictions. *Id.* at 686. However, in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the court modified Lenn's sentence, and vacated and remanded Glenn's sentence for new sentencing. *Id.* at 685-86. Petitioners filed a joint petition for leave to appeal (PLA) to the Supreme Court of Illinois, which the court denied on February 5, 2003. (Doc. 13, Ex. 1, pp. 19-20).

In September 2001, in the midst of the direct appeal proceedings, Petitioners filed a post-conviction petition under Illinois' Post-Conviction Hearing Act, 725 ILCS 5/122-1 (West 2008). (Doc. 13, Ex. 7, p. 69). Several amendments and motions pursued, and the court ultimately denied the petition in October 2009. *Id.* at 83. Petitioners appealed and the Appellate Court of Illinois affirmed the denial on May 31, 2012. (Doc. 13, Ex. 1, pp. 21-23).

On July 18, 2012, Lenn wrote to the Clerk of the Supreme Court of Illinois requesting permission for Petitioners to file a joint PLA. (Doc. 13, Ex. 1, p. 29). The clerk wrote back,

> Please be advised that a joint petition for leave to appeal cannot be filed without the signature of both petitioners. Therefore, your brother, Glenn W. Reed, Jr., must also sign the petition to attest to the fact that this petition is being filed with his consent and knowledge.
>
> We are forwarding one of your petitions for leave to appeal to your brother today with a copy of this letter. If he agrees to the filing of this petition, <u>it will be Glenn's responsibility</u> to sign his name to the cover page and proof of service of the petition, and to return the document to our office for filing without delay. Please be advised you two only have until **September 4, 2012**, for the signed petition for leave to appeal to be timely submitted . . . .

*Id.* at p. 30.

On March 18, 2014, Lenn wrote another letter to the clerk, stating Petitioners timely filed a PLA but had not received a status update in a year. *Id.* at p. 31. On March 25, 2014, the clerk responded that a PLA was not on file for their case. *Id.* at 32.

Petitioners then filed a motion for leave to file a late PLA in April 2014. *Id.* at pp. 24-27. The Supreme Court of Illinois denied the motion on September 23, 2014. (Doc. 13, Ex. 2, p. 1).

Petitioners filed the instant § 2254 petition on July 23, 2015. (Doc. 1).

## Analysis

Pursuant to 28 U.S.C. § 2254, persons in custody pursuant to a state court judgment may bring a petition for a writ of habeas corpus "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitions under § 2254 are subject to a limitations period of one year and must clear several procedural barriers as well. Respondent, here, alleges Petitioners' claims are both procedurally defaulted and untimely.

### 1. *Statute of Limitations*

A petitioner must file a § 2254 within one year from the latest of several events, including, as applicable here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d). The time during which a properly filed State

post-conviction proceeding is pending shall not be counted toward any period of limitation. *Id.*

Petitioners filed a post-conviction petition in State court before a final judgment was rendered in their direct appeal. The State petition therefore tolled the statute of limitations for filing a § 2254 petition during its pendency.

The Appellate Court of Illinois affirmed the denial of Petitioners' post-conviction petition on May 31, 2012. According to correspondence from the Clerk of the Supreme Court of Illinois, Petitioners had until September 4, 2012 to timely file a PLA. (Doc. 13, Ex. 1, p. 30). Petitioners failed to do so.

The Seventh Circuit has not decided whether a post-conviction petition is "pending" during the time for filing a PLA when a petitioner does not file one. *Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008) ("It is unnecessary to decide, and we therefore reserve, the question whether time provided for filing a petition or appeal to a higher court is treated as time during which an application is pending, if the time expires without a filing."). The answer to this question, however, ultimately makes no difference to the outcome of this case. Petitioners had one year after either May or September of 2012 to file their habeas petition in this Court and did not do so until 2015. The petition is therefore time-barred.

### 2. *Procedural Default*

Respondent also asserts Petitioners' claims are procedurally defaulted. The petition is clearly untimely under 28 U.S.C. § 2244's statute of limitations, but for the sake of completeness the Court will also address Respondent's remaining

argument.

Before a federal court can entertain a petition brought under § 2254, principles of comity mandate a petitioner first give the state a "fair opportunity" to address his constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Otherwise, the claims are procedurally defaulted and he cannot later raise them in a § 2254 petition. *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). In Illinois' two-tiered appellate system, a petitioner must present his claims to an intermediate appellate court and to the Supreme Court of Illinois in the form of a PLA, or throughout post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Here, Petitioners raise the following arguments in their § 2254:

(1) The evidence was insufficient to convict because the State's case rested entirely on Cunningham's testimony.
(2) The jury was improperly permitted to view an audio recording "that did not have any relevance, but was prejudicial," in violation of the due process clause.
(3) Cunningham's testimony was perjured.
(4) The State led the jury to believe Cunningham would receive a twenty-year sentence for his role in the crime.
(5) Trial counsel was ineffective for failing to raise a fair cross-section challenge.

(6) Trial counsel was ineffective for not introducing evidence that someone else was responsible for the crime.

(7) Trial counsel was ineffective for not objecting to the late disclosure of the hair evidence and not having the hair tested.

(8) The State's disclosure of the hair evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963).

(9) Trial counsel was ineffective for not presenting exculpatory fingerprint evidence.

(10) Trial counsel's offer of proof to admit the confidential source's statement was ineffective.

(Doc. 1, pp. 12-30).

As explained above, Petitioners failed to file a PLA during their State post-conviction proceedings. They therefore did not properly present those arguments throughout one full round of Illinois' post-conviction process. In addition, the only issue presented to the Supreme Court of Illinois via a PLA during direct appellate proceedings was whether the trial court abused its discretion by allowing the jury to view a largely inaudible videotape. (Doc. 13, Ex. 1, p. 15). Petitioners did not allege a due process violation related to the viewing of the tape, as they do now, or cite any federal case law in support of their argument. See Doc. 13, Ex. 1, pp. 12-20. Thus, Petitioners did not fairly present the constitutional claim to the State and it is procedurally defaulted as well. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) (petitioner procedurally

defaulted his claim under § 2254 where, on direct appeal, he did not cite any federal cases and argued the State court abused its discretion).

### 3. Equitable Tolling

Petitioners assert they are entitled to equitable tolling of the statute of limitations. "Equitable tolling is an extraordinary remedy" that courts "rarely" grant. *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted).

Petitioners contend that either the clerk failed to docket their PLA or prison officials did not mail it to the court. Petitioners were allegedly unaware their PLA was never filed until March 2014. Petitioners assert this constitutes an extraordinary circumstance that entitles them to equitable tolling.

Glenn submitted a sworn affidavit stating he "signed and had notarized" the PLA and its Proof of Service on September 4, 2012, and mailed the documents to the clerk via the institutional mailing system on that same day. (Doc. 21, p. 58).

Even assuming a docketing or mailing mistake prevented a timely filing, Petitioners cannot demonstrate they diligently pursued their legal rights. In September 2012, Glenn wrote to the Illinois Attorney General requesting a "filed copy" of Petitioners' PLA. See Doc. 21, p. 63. The Attorney General's office wrote back on September 11, 2012, and informed Glenn that the office received the

joint PLA, "[b]ut the Office of the Attorney General does not officially file PLAs. . . ." *Id.* Glenn was instructed to contact the Clerk of the Supreme Court of Illinois. *Id.* Petitioners did not correspond with the clerk until nearly two years later on March 18, 2014. (Doc. 21, p. 61). The clerk responded on March 25, 2014, informing Petitioners a PLA was not on file for their case. *Id.* at 62. Petitioners filed a motion for leave to file a late PLA the next month, (Doc. 13, Ex. 1, pp. 24-27), but failed to file a § 2254 petition in this Court until over a year later, in July 2015.

Petitioners allowed substantial time to elapse between the instances in which they pursued the filing of both their PLA and § 2254 petition. Their pursuit, therefore, does not demonstrate diligence that justifies equitable tolling. *See Johnson v. McCaughtry*, 265 F.3d 559, 565 (7th Cir. 2001) (where the petitioner did not exercise diligence because "he wasted 154 days through no fault of any court" and 210 days elapsed between the time the state denied review and he filed for federal habeas relief). Petitioners bear the burden of establishing they are entitled to equitable tolling and, here, they have not cleared the "high bar that the Court has erected in this area . . . ." *Socha v. Boughton*, 763 F.3d 674, 684-85 (7th Cir. 2014).

### 4. *Miscarriage of Justice*

Petitioners also assert a fundamental miscarriage of justice would result if the Court dismissed their petition. In *McQuiggin v. Perkins,* the United States Supreme Court held that "a credible showing of actual innocence" may overcome

procedural bars because the Court's refusal to consider the petition would result in a "fundamental miscarriage of justice." 569 U.S. 383, 392-94 (2013). A showing of actual innocence is "demanding" and "seldom met." *Id.* at 386.

A credible claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The *Schlup* standard permits habeas review of untimely claims only in the "extraordinary case" where the petitioner has demonstrated that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

### a. *Fingerprint Evidence*

Petitioners claim several fingerprints were lifted from Ufert's vehicle that do not match their own. Petitioners contend this evidence was not presented at trial and proves their innocence.

Officer Nonn, one of the investigative officers, testified the investigation returned five fingerprints that were compared to Petitioners'. (Doc. 23, Ex. 1, pp. 174-83). However, Officer Nonn did not reveal the results of the comparison and neither the prosecution nor the defense offered any further evidence on the matter.

Petitioners' trial attorneys[1] testified at a State post-conviction hearing that the fingerprint testing returned inconclusive results. After discussing the issue with their clients, the attorneys did not introduce this evidence out of concern the jury would draw a negative inference from the inconclusiveness. (Doc. 23, Ex. 3, pp. 175-77, 183-84). During closing arguments, however, one of the defense attorneys stated, "We didn't hear what the results were, so I guess that didn't say that my client was in that car." *Id.* at p. 23. The prosecution, on the other hand, posited the fingerprints did not match because Petitioners "cleaned up the evidence." *Id.* at 47.

The fingerprint evidence was clearly presented and argued at trial and is therefore not "new" under *Schlup*. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015). "[M]erely putting a different spin on evidence that was presented to the jury does not satisfy the *Schlup* requirements. . . ." *Gomez v. Jaimet*, 350 F.3d 673, 680 (7th Cir. 2003).

### b. *Witness Statements*

Petitioners next assert there are three witnesses whose "information" taken together can "suggest that two White males on the scene, at a time of the crimes, in fact committed the crimes." (Doc. 21, p. 28). These witnesses consist of (1) a confidential source who told a detective two white men committed the crime; (2) Ray Bucher, who told police he saw two Caucasian males in their thirties near the

---

[1] Lenn and Glenn were tried together but represented by different attorneys to avoid any conflict of interests.

scene; and (3) Terry Wooten, who lived in close proximity to the crime scene, who reported he heard a car crash the night of the crime, got out of bed, and saw Ufert's "disabled" vehicle but could not identify any people in the area. *Id.* at 41-42.

None of this evidence constitutes new and reliable evidence. Terry Wooten testified at length at trial and his statements are therefore not new. (Doc. 23, Ex. 1, pp. 193-205). In addition, the confidential source's statement is hearsay and the declarant is unknown, which renders the evidence unverifiable and unreliable. *See Thomas v. Williams*, 822 F.3d 378, 397 (7th Cir. 2016) (finding an affidavit not credible because the information was hearsay within hearsay and the identity of the declarant was unknown). The Illinois trial court reached this same conclusion when it excluded the source's statement from trial. *People v. Reed*, 2012 IL App (5th) 090629-U, ¶ 7.

Lastly, although Bucher's statement was not introduced at trial, the evidence does not establish Petitioners are actually innocent under *Schlup* and *McQuiggin*'s exacting standards. Bucher stated he drove to his friend's house on Culp Lane around 4:45 a.m. the day the crime occurred. He noticed two white males walking east who immediately began walking west once Bucher passed them. Bucher then witnessed the subjects crawl underneath a fence on a golf course and walk north. (Doc. 2, pp. 67-68). No other evidence linked these men to the crime.

Petitioners argue the two Caucasian men actually committed the crime.

Petitioners attempt to bolster their argument by pointing to Caucasian hairs recovered from Ufert's vehicle. The hairs were apparently never tested or introduced into evidence; the defense attorneys testified the hair was essentially a nonissue because it did not link Petitioners to the crime. (Doc. 23, Ex. 3, pp. 184, 178). Petitioners, however, argue the hairs prove the two Caucasian men identified in Bucher's statement committed the crime.

Petitioners' theory is far too tenuous and based entirely on speculation. Even though the State's case hinged largely on Cunningham's testimony, "it is well established that a conviction may rest alone on the testimony of a codefendant or an accomplice." *United States v. Karavias*, 170 F.2d 968, 971 (7th Cir. 1948). The aforementioned statements do not prove Petitioners are actually innocent.

### c. *Hair Recovered from the Deployed Airbag*

Finally, Petitioners contend Officer Nonn found hair on the deployed airbag of Ufert's vehicle that did not belong to Petitioners, Cunningham, or Ufert. They assert the State suppressed the exculpatory evidence and "there can be no question that that hair strand came from who ever was operating the vehicle when it wrecked. . . ." (Doc. 21, p. 28). A review of the record, however, shows this evidence does not exist. The misconception seems to arise from Officer Nonn's trial testimony. Lenn's defense attorney established the following line of questioning:

> Q: And it would be your experience that if an airbag opened up and you had a contact with the driver of the motor vehicle, it would have been a fairly forceful contact?

**13** of 15

> A: I would think so.
>
> Q: In fact, were you able to locate any hair samples of Mr. Lenn Reed on or near or around that airbag?
>
> A: Well, you can't say the hair sample belongs to anybody, in particular.
>
> . . .
>
> Q: Did you find a hair?
>
> A: No.
>
> Q: So, you didn't find a hair of Mr. Lenn Reed?
>
> A: No.

On redirect examination, the prosecution asked:

> Q: There weren't any hairs found, right?
>
> A: No.
>
> Q: From anybody?
>
> A: No.

(Doc. 23, Ex. 1, p. 180).

There is no indication hairs were recovered from the deployed airbag. The evidence is not only unreliable, but also nonexistent. Petitioners do not meet the fundamental miscarriage of justice exception and the untimeliness of their habeas petition bars the Court from reaching the merits of their claim.

### 5. *Certificate of Appealability*

Pursuant to Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts, this Court must "issue or deny a certificate of appealability

when it enters a final order adverse to the applicant." The Court should issue a certificate only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where the Court dismisses a petition on procedural grounds without reaching the underlying constitutional issue, the petitioner must show that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The petitioner must establish both components for a COA to issue.

Here, it is clear that Petitioners' petition is untimely and procedurally defaulted, and they have not advanced a credible claim of actual innocence within the meaning of *McQuiggin* and *Schlup*. No reasonable jurist would find the issue debatable. Accordingly, the Court denies a certificate of appealability.

## Conclusion

Lenn Reed and Glenn Reed's petitions for habeas relief under 28 U.S.C. § 2254 (Doc. 1) are **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment in favor of Respondent.

**IT IS SO ORDERED**

Judge Herndon
2018.01.11
05:08:40 -06'00'

United States District Judge